UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

SHELDRICK VALENTINE,

Petitioner,

-vs-

RICHARD A. SAVAGE, SUPERINTENDENT
GOWANDA CORRECTIONAL FACILITY[1]

Respondent.

**DECISION AND ORDER**
**No. 09-CV-0887T**

## I. Introduction

Petitioner Sheldrick Valentine ("Petitioner"), through counsel, has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered June 15, 2005, in New York State, County Court, Erie County (Shirley J. Troutman, J.), convicting him, after a jury trial, of Course of Sexual Conduct Against a Child in the First Degree (N.Y. Penal Law ("Penal Law") § 130.75 [1][a]) and Endangering the Welfare of a Child (Penal Law

1 Petitioner has named as his respondent "Richard A. Savage, Superintendent Gowanda Correctional Facility" and "Andrew Cuomo, New York State Attorney General." The correct respondent for a § 2254 habeas proceeding is the name of the authorized individual having custody of the petitioner. 28 U.S.C. § 2243. Given that petitioner is incarcerated in the Gowanda Correctional Facility, the correct respondent therefore is only "Richard A. Savage, Superintendent Gowanda Correctional Facility." Because this will not prejudice respondent, the Court will deem the petition amended to change the identity of the respondent to "Richard A. Savage, Superintendent Gowanda Correctional Facility." The Clerk of the Court is directed to remove "Andrew Cuomo, New York State Attorney General" as respondent and revise the caption of this action accordingly.

§ 260.10 [1]).[2] Petitioner was sentenced to a determinate term of ten years imprisonment with five years post-release supervision.

For the reasons stated below, habeas relief is denied and the petition is dismissed.

## II. Factual Background and Procedural History

Under Indictment No. 01129-2003, Petitioner was charged with Sodomy in the First Degree (Penal Law § 130.50 [3]), Course of Sexual Conduct Against a Child in the First Degree (Penal Law § 130.75 [1][a]), Sexual Abuse in the First Degree (Penal Law § 130.65 [3]), and Endangering the Welfare of a Child (Penal Law § 260.10 [1]). See Ind. No. 01129-2003 at Resp't Ex. A.

Deltha Valentine married Petitioner in 1991 and had three children with him. The two separated in 1997 and Petitioner moved to California, where he lived for three years. In 2000, Petitioner returned to the Buffalo, New York area and stayed with his mother at 51 Meadow Lea in Amherst, New York. Trial Trans. [T.T.] 223-226.

While Petitioner was residing at his mother's home, Petitioner's three marital minor children, S.V. (age 13), C.V. (age 11) ("C.V." or "the victim"), and D.V. (age 9), visited him regularly. Even after Petitioner moved out of his mother's home,

---

[2] The state court records reflect that a jury trial was conducted before the Hon. Shirley Troutman on or about February 17, 2005 and ended in a mistrial. Petitioner's re-trial was commenced in March 2005 and resulted in the convictions that are the basis for this habeas proceeding.

he still maintained contact with his children at 51 Meadow Lee. T.T. 224-226, 228-229.

At trial, C.V. testified that Petitioner put his penis in her mouth just after she turned eight-years-old in December 2001. That same winter, Petitioner told C.V. to pull her pants down and put her hands on the side of the bathtub while Petitioner "put his private against [C.V.'s] rear end." In September or October 2002, on a day that C.V. carved pumpkins with her father, he again put his penis in her mouth. Petitioner also put his penis in C.V.'s mouth during April 2003 during her spring school break. T.T. 66-77.

According to C.V., each of the instances occurred in the bathroom at 51 Meadow Lea. Before engaging in the behavior set forth above, Petitioner would ask C.V. if she wanted "[him] to check [her] teeth or [her] bottom." C.V. testified that she would "wait or try to say later but [Petitioner] would just ignore her." T.T. 78.

S.V., the victim's brother, testified that he saw Petitioner go into the bathroom with C.V. at 51 Meadow Lea and close the door. According to S.V., after Petitioner did so, C.V. was quiet and not as happy as she ordinarily was. T.T. 134-142.

In April 2003, C.V. told S.V. what their father was doing to her. C.V. and S.V. then approached their mother and told her what happened, and Deltha Valentine then called the police. T.T. 140-

141, 234. According to Deltha Valentine, their children had last been with Petitioner at 51 Meadow Lea the weekend of April 11-13, 2003. T.T. 236.

After a jury trial before the Hon. Shirley Troutman, Petitioner was found guilty of Sexual Conduct Against a Child in the First Degree and Endangering the Welfare of a Child. He was acquitted of Sodomy in the First Degree and Sexual Abuse in the First Degree. T.T. 625-626. He was subsequently sentenced to a determinate ten year term of imprisonment with five years post-release supervision. Sentencing Mins. [S.M.] 12.

The Appellate Division, Fourth Department unanimously affirmed Petitioner's judgment of conviction on February 8, 2008, and leave to appeal was denied. People v. Valentine, 48 A.D.3d 1268 (4th Dep't 2008); lv. denied, 10 N.Y.3d 871 (2008).

On or about August 4, 2008, Petitioner moved, pursuant to N.Y. Crim. Proc. Law ("CPL") § 440.10, to vacate the judgment of conviction on the basis of ineffective assistance of trial counsel. In support of the motion, Petitioner alleged that his attorney had failed to convey the People's plea offer and the court's sentence commitment to him (should he plead) before the re-trial of his case, and failed to advise him of the significant difference in possible sentences and the hazards of rejecting the plea, especially in light of an adverse evidentiary ruling before the second trial. See Resp't Ex. D.

After conducting a hearing on the matter in which various witnesses testified, the trial court denied Petitioner's motion, finding that his attorney had informed him before each trial of the plea offer and the court's sentence commitment, as well as the possible sentence if convicted after trial. The testimony presented at the hearing established that Petitioner had repeatedly rejected the plea while maintaining his innocence and that he and his counsel had extensively and timely discussed the plea and sentence possibilities. Id.

Petitioner appealed the trial court's denial of his motion, and leave to appeal was denied on January 9, 2009. Id.

This habeas corpus petition followed, wherein Petitioner seeks relief on the following grounds: (1) ineffective assistance of trial counsel; and (2) deprivation of right to confrontation. See Pet., Points I-II (Dkt. No. 1). Petitioner's claims are exhausted and properly before this Court.

**III. General Principles Applicable to Habeas Review**

**A. The AEDPA Standard of Review**

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of

incorrectness such that it may be said to be unreasonable." Id. This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), cert. denied sub nom. Parsad v. Fischer, 540 U.S. 1091 (2003). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

**B. Exhaustion Requirement**

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828

(2d Cir.1994), cert. denied, 514 U.S. 1054 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*), cert. denied, 464 U.S. 1048 (1984).

**IV. Petitioner's Claims**

**1. Ineffective Assistance of Trial Counsel**

In Point I of the petition, Petitioner argues, as he did in his CPL § 440.10 motion, that he received ineffective assistance of trial counsel. Petitioner alleges that his counsel failed to convey the People's plea offer and the court's sentence commitment to him before the re-trial of his case, and failed to advise him of the difference in possible sentences and the hazards of rejecting the plea, especially in light of an adverse evidentiary ruling[3] prior to the second trial. See Pet., Point I. The Erie County Court rejected this claim on the merits after conducting a hearing on the matter. See Resp't Ex. D. As discussed below, this claim is meritless and provides no basis for habeas relief.

To demonstrate a violation of his Sixth Amendment right to the effective assistance of counsel, a petitioner must show that his attorney's representation was deficient in light of prevailing professional norms and that prejudice inured to him as a result of

---

[3] This evidentiary ruling provides the basis for Petitioner's second ground for habeas relief, and is discussed at Section "IV, 2" below.

that deficient performance. Strickland v. Washington, 466 U.S. 668, 687 (1984).

Moreover, an attorney's failure to communicate a plea offer to his client, or to advise his client adequately about the plea offer, may constitute constitutionally deficient assistance. See, e.g., Cullen v. United States, 194 F.3d 401, 404 (2d Cir. 1999) (defense counsel grossly underestimated defendant's potential maximum sentence); United States v. Gordon, 156 F.3d 376, 380 (2d Cir. 1998) ("defense counsel in a criminal case must advise his client of the merits of the government's case, of what plea counsel recommends, and of the likely results at trial"). To prevail on such a claim, a petitioner must show that (1) the attorney failed to communicate a plea offer or provide adequate advice about the plea and sentencing exposure; and (2) there is a reasonable probability that but for the attorney's deficient performance, the petitioner would have accepted the plea offer. See Purdy v. United States, 208 F.3d 41, 49 (2d Cir. 2000); Cullen, 194 F.3d at 404. Petitioner has failed to make such a showing.

In conjunction with Petitioner's CPL § 440.10 motion, the trial court conducted a hearing. See Pet'r. Ex. C. At the hearing, the prosecutor, Petitioner's trial attorney, Petitioner, and Monysha Brown (Petitioner's girlfriend) testified. The testimony established that Petitioner's attorney had informed Petitioner before each trial of the plea offer and the court's

sentence commitment, as well as the possible sentence if convicted of the charges afer trial. The testimony further established that Petitioner had repeatedly rejected the plea while claiming innocence, and that he and his counsel had extensively and timely discussed the plea and sentence possibilities. Accordingly, the trial court denied Petitioner's motion premised upon ineffective assistance of counsel. See Resp't Ex. D.

The trial court's legal conclusions regarding counsel's effectiveness were premised on factual findings that are presumed to be correct unless rebutted by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1). Petitioner has failed to do so. To this extent, he has failed to demonstrate that his attorney's performance was constitutionally deficient.

Moreover, assessing all the relevant circumstances and evidence in this case, Petitioner cannot demonstrate a reasonable probability that but for counsel's allegedly deficient performance, he would have pleaded guilty and benefitted by the Court's sentence commitment. The record before this Court reflects that Petitioner adamantly maintained his innocence throughout the trial, testifying that he did not commit the crimes charged. T.T. 390, 398-399, 416-419, 430-433, 439-440; see, e.g., United States v. Feyrer, 333 F.3d 110, 120 (2d Cir. 2003) (finding that defendant's repeated assertions of innocence are "obviously incompatible with the suggestion that he would have readily pled guilty" and that under

such circumstances defendant "failed to demonstrate the required reasonable probability that, but for [counsel's] deficient performance as counsel, he would have pled guilty"). Additionally, the Court notes that Petitioner's prospects for conviction at trial were not entirely assured. The People's proof was not overwhelming and Petitioner was ultimately acquitted of two counts of the indictment. Given these circumstances and that Petitioner's first trial resulted in a mistrial, it is not unlikely that Petitioner made a calculated decision -- based on what he may have perceived as deficiencies in the People's proof -- to proceed to trial with the goal of avoiding imprisonment altogether.

In sum, the Court cannot find that Petitioner was deprived of his constitutional right to the effective assistance of counsel. The state court's adjudication of this claim did not contravene or unreasonably apply settled Supreme Court law, and the claim is therefore dismissed in its entirety.

**2. Deprivation of Right of Confrontation**

Petitioner argues, as he did on direct appeal, that the trial court violated his constitutional right of confrontation by refusing to admit in evidence a tape recording of threats made against him by Deltha Valentine. See Pet., Point II. The Appellate Division, Fourth Department rejected this claim on the merits. See Valentine, 49 A.D.3d at 1269. As discussed below, this claim is meritless and provides no basis for habeas relief.

It is established that the Confrontation Clause of the Sixth Amendment guarantees a criminal defendant the right to cross-examine the witnesses against him, because "[c]ross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested." Davis v. Alaska, 415 U.S. 308, 316 (1974). Importantly, "a[n] . . . attack on the witness' credibility is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues, . . . in the case at hand." Id. The right is not unlimited, however, and it does not include the right to "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Kentucky v. Stincer, 482 U.S. 730, 739 (1987) (citations omitted). Rather, so long as "the jury is in possession of facts sufficient to make a 'discriminating appraisal' of the particular witness's credibility," cross-examination is not improperly curtailed. United States v. Roldan-Zapata, 916 F.2d 795, 806 (2d Cir. 1990) (quoting United States v. Singh, 628 F.2d 758, 763 (2d Cir. 1980), cert. denied, 449 U.S. 1034 (1980)).

In this case, Petitioner's right to confront Deltha Valentine was not curtailed or infringed upon by the trial court's ruling with respect to the audiotapes in question. A review of the record before this Court reveals that Deltha Valentine testified for the

prosecution in Petitioner’s first trial. At that trial, the defense was permitted to impeach Deltha Valentine by playing audiotapes in which Deltha Valentine threatened Petitioner. Prior to Petitioner’s re-trial, the prosecution filed a motion in limine asking the trial court to deny Petitioner the right to introduce the tapes at trial. Defense counsel opposed the motion, arguing that he wished to use these tapes to attack Deltha Valentine’s credibility. T.T. 2-3.

The trial court granted the People’s motion in limine, ruling that the tapes were collateral and that they would not be admissible absent a denial by Deltha Valentine that she left any hostile messages for Petitioner. T.T. 2, 5-6. Deltha Valentine did not deny leaving hostile messages for Petitioner in her direct examination. The defense was therefore limited to quoting from the tapes and asking Deltha Valentine whether she made certain threatening or hateful statements to Petitioner during cross-examination. In response to this line of questioning, Deltha Valentine admitted to leaving certain messages for Petitioner and that she made certain specific threats against him. T.T. 257-278. Furthermore, during direct examination of Petitioner, defense counsel elicited testimony from Petitioner with respect to the substance of the phone messages. T.T. 366, 370-373, 375-376, 381, 383-385. In summation, defense counsel also referred to the threats as evidence that, over a seven-year period, Deltha

Valentine's rage had been "boiling and boiling and boiling." T.T. 496. Under these circumstances, where the trial court permitted defense counsel to expose the jury to facts sufficient to evaluate Deltha Valentine's credibility -- albeit not in the precise manner in which he may have wished -- Petitioner's right to confront Deltha Valentine was not violated.

Accordingly, the state court's adjudication of this claim did not contravene or unreasonably apply settled Supreme Court law and the claim is dismissed in its entirety.

**V. Conclusion**

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. No. 1) is denied, and the petition is dismissed. Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action.

Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

S/Michael A. Telesca

HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED: September 27, 2011
Rochester, New York